UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| LIONEL VINCENT HEARD, ) | |
| ) | |
| Petitioner, ) | Civil Action No. 5: 16-95-DCR |
| ) | |
| V. ) | |
| ) | |
| FRANCISCO QUINTANA, Warden, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Respondent. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Inmate Lionel Vincent Heard is currently confined by the Bureau of Prisons ("BOP") at the Federal Medial Center-Lexington ("FMC"), located in Lexington, Kentucky. Proceeding without an attorney, Heard has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 [Record No. 1]. Heard alleges that Respondent Francisco Quintana, Warden of FMC, has improperly refused to grant him a one-year reduction of his federal sentence after having participated in the BOP's Residential Drug Abuse Program.[1] Heard further alleges that Warden Quintana has also improperly refused to consider him either for placement in a Residential Reentry Center ("RRC"), also known as a half-way house, or for release to home confinement ("house arrest" as described by Heard). Heard has paid the $5.00 filing fee. [Record No. 5]

---

[1] The RDAP is a program through which qualified federal inmates receive various incentives for participating in drug abuse treatment programs. 28 C.F.R. § 550.57. The BOP has discretion to allow an inmate a sentence reduction of up to one year if the inmate was convicted of a nonviolent offense and has successfully completed a substance abuse treatment program. 18 U.S.C. § 3621(e)(2)(B).

-1-

## I.

On November 19, 2009, Heard was indicted in this jurisdiction and charged with conspiring to distribute over fifty grams of cocaine base (i.e., crack cocaine). *United States v. Lionel Vincent Heard*, No. 2:09-CR-86-DLB-EBA-1 (E.D. Ky. 2009) [Record No. 3, therein]  On July 9, 2010, Heard pleaded guilty to one count of conspiring to distribute fifty grams cocaine base in violation of 21 U.S.C. § 846 [*see* Record Nos. 39; 40 therein].  On that same date, Heard was sentenced to serve a 108 month term of imprisonment [Record No. 42, therein].[2]  According to the BOP's website, Heard projected release date is November 17, 2017.  See http://www.bop.gov/inmateloc/ (last visited on April 20, 2016).

## II.

The Memorandum attached to Heard's § 2241 petition is rambling and disjointed, making it difficult to reconstruct the relevant facts with any precision.  However, it appears that, as a federal drug offender, Heard was either considered for participation in, or actually participated in, the RDAP.  At some point in 2015, he was "expelled" from the program.  *See* Petition [Record No. 1, p. 3]  Heard states that "…before he was

---

[2] In October 2010, Heard filed a motion to vacate his sentence under 28 U.S.C. § 2255 [Record No. 45, therein].  The Court denied that motion on April 24, 2012. [Record No. 61, therein] Heard then filed several motions seeking a recalculation of his sentence; retroactive application of the federal sentencing guidelines; and a sentence reduction under 18 U.S.C. § 3582, but the Court denied those motions. [Record No. 70; Record No. 74, therein]  On January 13, 2016, Heard filed another motion in his criminal proceeding in which he again requested a sentence reduction [Record No. 75].  That motion remains pending.

allowed to enter the program…," Dr. Stenson at FMC-Lexington knew about his pre-existing cardiac condition, but "…made no mention of his being expelled at that time and his Equal Protection rights not to be discriminated against because of his disability." [*Id.*] Heard states that when he entered into the RDAP contract, he was not informed "…that he would be ineligible for the one-year early release or RRC placement and Respondent was well aware that petitioner had adefibulator [sic] at that time." [*Id.*]  Heard argues that nothing in 18 U.S.C. § 3621 permits the BOP to deny a federal prisoner the one-year sentence reduction based on his medical condition or medical disability. [*Id.*, p. 4]

Heard also asserts that Warden Quintana violated his constitutional rights by refusing to consider him for either RRC placement or home confinement based on his pre-existing cardiac condition.  He also argues that he should be granted either RRC placement or home confinement under the Second Chance Act of 2007, Pub. L. No. 110–199, 122 Stat. 657 (Apr. 9, 2008).  Heard may also be claiming that he qualifies for a compassionate release from federal custody based on 18 U.S.C. § 3582 (c)(1)(A). Finally, Heard claims that, by denying him a one-year sentence reduction, and by refusing to grant him either RRC placement or home confinement, Warden Quintana has discriminated against him based on his medical disability and, therefore, has denied him equal protection and due process guaranteed by the Fifth Amendment of the United States Constitution.

Heard administratively exhausted one issue raised in his § 2241 petition, to wit: his dissatisfaction with being denied RRC placement.  Heard submitted a BP-9

administrative remedy request to Warden Quintana requesting consideration for such placement. Warden Quintana apparently denied the request, although Heard did not attach either his administrative remedy request or the Warden's denial to his § 2241 petition.

On December 22, 2015, Heard filed a BP-10 appeal to the BOP's Mid-Atlantic Regional Office ("MARO"), seeking consideration for an RRC placement. [Record No. 1-1, p. 8] On January 13, 2016, J.F. Carraway, Regional Director of the MARO, affirmed Warden Quintana's decision and denied Heard's appeal. [*Id*.] Carraway explained that a medical evaluation conducted on December 22, 2015, revealed Heard's "…fragile condition due to cardiac problems," and that Heard's condition "…indicates a prolonged need for anticoagulant with an implanted defibrillator." [*Id*.] Carraway informed Heard that if his medical condition improved, the Regional Reentry Management Branch would reassess whether he would be suitable for RRC placement; that Heard's medical plan of care was adequate and complete; and that Heard's medical needs were being properly addressed. [*Id*.] [3]

Heard alleges that he appealed the MARO's decision to the BOP General Counsel in Washington, D.C. [*see* Record No. 1, p. 3, ¶ 9], but he neither attached a copy of his BP-11 appeal, nor identified the date on which he filed his BP-11 appeal. Accepting as true Heard's allegation that he filed a timely BP-11 appeal, and further assuming that

---

[3] The MARO's response does not indicate that Heard specifically challenged his expulsion from the RDAP. The only issue which the MARO identified as having been raised by Heard in his BP-10 appeal concerned the decision to deny him consideration for placement in an RRC.

Heard received no response from the General Counsel, the lack of a response constitutes a denial. *See* 28 C.F.R. 542.18 ("If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level.")

In his § 2241 petition and attached memorandum, Heard seeks an order directing Respondent Francisco Quintana, the Warden of FMC-Lexington, to reduce his sentence by one year, based on his participation in the RDAP. [Record No. 1, pp. 6-7; ¶ 13(a); Record No. 1-1, p. 7]  Alternatively, Heard seeks an order directing his transfer to an RRC; his release to home confinement; or a "compassionate release" from federal custody. [*Id.*]

### III.

The Court conducts an initial review of habeas corpus petitions. 28 U.S.C. § 2243; *Alexander v. Northern Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011). The Court must deny the petition "if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (applicable to § 2241 petitions pursuant to Rule 1(b)). The Court evaluates Heard's petition under a more lenient standard because he is not represented by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003). At this stage, the Court accepts Heard's allegations as true, and liberally construes his legal claims in his favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). But for the reasons set forth below, the

Court has determined that Heard is not entitled to relief under § 2241, and will therefore deny his habeas petition.

## IV.

Heard's challenge to his expulsion from the RDAP -- and the resulting denial of a one-year reduction on his 108-month federal sentence -- lack merit. Pursuant to 18 U.S.C. § 3621, the BOP must provide each prisoner the opportunity to participate in residential substance abuse treatment in his place of confinement. *See* 18 U.S.C. § 3621(b),(e)(1). The statute provides two incentives to prisoners who successfully complete an RDAP. First, the Director has discretion to modify the conditions of the prisoner's confinement. *See* 18 U.S.C. § 3621(e)(2)(A). Second, certain prisoners may be eligible for early release from their sentences. Specifically, the statute states:

> The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

18 U.S.C. § 3621(e)(2)(B) (emphasis added).

The statute leaves the decision of whether to grant early release to the discretion of the BOP. *See Lopez v. Davis*, 531 U.S. 230, 241 (2001). Thus, even where a prisoner successfully completes the RDAP, the BOP retains the discretion to deny early release. *See McLean v. Crabtree*, 173 F.3d 1176, 1182 (9th Cir. 1999); *Orr v. Hawk*, 156 F.3d 651, 653-54 (6th Cir.1998).

Heard's expulsion or removal from RDAP did not deprive him of either procedural or substantive due process. A prisoner has no liberty interest in discretionary

release from prison prior the expiration of his or her sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) (holding "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence"). Nor does a prisoner have a liberty or property interest in participating in a prison rehabilitation program. *See Moody v. Daggett*, 429 U.S. 78, 88 (1976).

The statute itself does not implicate a constitutionally-protected liberty interest because it does not mandate a sentence reduction. 18 U.S.C. § 3621(e). Congress mandated in § 3621 that only inmates who successfully completed the RDAP could be considered for "early release" from confinement, but Congress neither defined the term "successfully," nor identified the contours or requirements for prisoner eligibility. The statute thus leaves the interpretation and related decisions to the BOP's discretion. "In this familiar situation, where Congress has enacted a law that does not answer 'the precise question at issue,' all [a reviewing court] must decide is whether the Bureau, the agency empowered to administer the early release program, has filled the statutory gap 'in a way that is reasonable in light of the legislature's revealed design.'" *Lopez*, 531 U.S. at 242 (quoting *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 257 (1995)).

As a result of the broad discretion left to the BOP, prisoners have no protected liberty or property interest in participating in an RDAP, and are not denied due process if they are removed from the program. *See Denton v. Zych*, No. 09-13581, 2010 WL

742606, at *3–4 (E.D. Mich. Mar. 1, 2010) (holding expulsion of prisoner from RDAP due to repeated misconduct offenses did not deprive prisoner of a protected liberty interest); *Ayala v. Phillips*, No. 5:07-CV-45, 2008 WL 450478, at *3 (N.D.W. Va. 2009) (finding that the decision to remove prisoner from RDAP "falls squarely within the BOP's discretion and is not subject to judicial review").  Nothing in the statute requires the BOP to grant early release to any eligible prisoner.  *Orr*, 156 F.3d at 652-53;  *Brown v. Scibana*, 86 F.Supp.2d 702, 704 (E.D. Mich. 2000); *Sesi v. United States Bureau of Prisons*, 238 F.3d 423, 2000 WL 1827950, at *2  (6th Cir. Dec, 7, 2000) (Table) (holding that even if an inmate completes the RDAP, the BOP was not required to grant him early release).  Absent a protected liberty or property interest, Heard's Fifth Amendment right to due process was not violated by his removal from the RDAP or by the decision to deny him a one-year reduction in his sentence.

Likewise, Heard was not denied substantive due process.  "The interests protected by substantive due process are much narrower than those protected by procedural due process."  *Hussein v. City of Perrysburg*, 617 F.3d 828, 832–33 (6th Cir. 2010).  Heard alleges the decision to remove him from the RDAP was arbitrary and capricious, but that action would only deprive him of substantive due process if his participation in the RDAP implicated a fundamental right or if the government's action shocked the conscience.  Participation in the RDAP is not "so rooted in the traditions and conscience of our people as to be fundamental."  *Simpson v. Coakley*, No. 4:14-CV-55, 2014 WL 2833088, at *4 (N.D. Ohio June 23, 2014) (quoting Hussein, 617 F.3d at 832–33).  Thus,

to the extent that Heard asserts that Warden Quintana violated his Fifth Amendment right to procedural and substantive due process rights by expelling him from the RDAP -- and thereby denying him a possible one-year reduction on his federal sentence -- he does not allege facts entitling him to relief under § 2241.

Heard's Fifth Amendment claims challenging Warden Quintana's refusal to transfer him to an RRC fare no better. The Second Chance Act, 42 U.S.C. § 17501, operates in conjunction with 18 U.S.C. § 3621(b). The Second Chance Act amended 18 U.S.C. § 3624(c) to "authorize[ ] the BOP to consider placing an inmate in an RRC for up to the final 12 months of his or her sentence, rather than the final six months that were available pre-amendment." *See Montes v. Sanders*, No. CV 07-7284-CJC (MLG), 2008 WL 2844494, at *1 (C.D. Cal. July 22, 2008).

> Title 18 U.S.C. § 3624(c)(1) states, in part:
>
> The Director of the Bureau of Prisons shall, *to the extent practicable*, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1) (emphasis added). Subsection (c)(2), allows the BOP to consider placing a federal inmate "…in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." However, the decision to place an inmate in a pre-release community confinement is determined on an individual basis and according to the factors listed in 18 U.S.C. § 3621(b).

The text of § 3624(c)(1) requires the BOP to make efforts to place a prisoner in a transitional facility as his or her prison term nears its end, but it does not require such placement to be for any minimum amount of time. RRC placement is capped at a maximum of twelve months and, as the statute clearly states, the BOP's efforts are only required "to the extent practicable." Further, the decision to place an inmate in pre-release community confinement and/or home confinement is discretionary and will be "determined on an individual basis" according to the factors in 18 U.S.C. § 3621(b). *See McIntosh v. Hickey*, No. 10-CV-126-JMH, 2010 WL 1959308, at *3 (E.D. Ky., May 17, 2010).

RRC placement and home confinement are helpful resources for readjustment to society, but a prisoners do not have a constitutionally protected right to serve the final twelve months of his sentence in either a RRC or in home confinement. Again, the Second Chance Act only requires the BOP to *consider* placing an inmate in an RRC or in home confinement for up to twelve-months. It does not automatically entitle, or guarantee, any prisoner such placement for twelve months. *See Demis v. Sniezek*, 558 F.3d 508, 514 (6th Cir. 2009); *Whittenberg v. Ziegler*, No. 5:12-CV-01430, 2105 WL 2406111, at *1, n.2 (S.D.W.Va. May 19, 2015) (Petitioner did not possess a constitutionally protected interest in placement in a RCC or on home confinement because the BOP's placement decisions under the statutes were clearly permissive, not mandatory); *Pennavaria v. Gutierrez*, No. 5:07CV26, 2008 WL 619197, * 9 (N.D.W. Va. Mar. 4, 2008) (federal prisoners do not have a protected liberty interest in being placed

on home confinement, and the BOP has complete and absolute discretion regarding where a prisoner is to be held in pre-release confinement); *Mallett v. Shartle*, No. 4:10-CV-1057, 2011 WL 3289463, at *2 (N.D. Ohio Aug. 1, 2011) ("Although the BOP is authorized to place an inmate in home confinement or CCC, an inmate is not entitled to such placement at any time. 18 U.S.C. § 3624(c). Mallett's only entitlement is an individual evaluation for placement at a CCC consistent with the factors set forth in 18 U.S.C. § 3621."); *Harris v. Hickey*, No. 10-CV-135-JMH, 2010 WL 1959379, at *3 (E.D. Ky. May 17, 2010);

    Under 18 U.S.C. § 3621(b)(3), the BOP is specifically permitted to consider "the history and characteristics of the prisoner," and such an analysis logically includes an assessment of the prisoner's medical condition. Here, the BOP determined that based on the results of his December 22, 2015, medical evaluation, Heard suffers from a serious cardiac condition which renders him inappropriate for RRC placement. A decision denying a federal prisoner RRC placement, based on his medical conditions, is a reasonable exercise of the BOP's discretion and prison officials' authority, under the statute and the relevant regulations and policies. *See Zerby v. Keffer*, No. 4:10-CV-197-Y, 2010 WL 3835235, at *2 (N.D. Tex. Sept. 1, 2010); *Stiger v. Haynes*, No. 2:13-CV-25, 2013 WL 3965425, at *2 (E. D. Ark. July 31, 2013) ("The RRC staff and administration rejected the RRC referral because of Mr. Stiger's medical conditions. This rationale was within their discretion.").

And as previously noted, a prisoner has no liberty interest protected by the Due Process Clause in discretionary release prior the expiration of his term of imprisonment, (*see Greenholtz*, 442 U.S. at 7) nor does he have a constitutional right to participate in any prison rehabilitation programs (*see Moody*, 429 U.S. at 88 n. 9).  Thus, Heard enjoys no statutory or constitutionally protected *right*, or entitlement, to transfer to an RRC or to home confinement.

Next, Heard's request must be denied to the extent that he may be seeking a compassionate release based on his medical condition.  The "compassionate release" provision found in 18 U.S.C. § 3582 (c)(1)(A), states that "the court, **upon motion of the Director of the Bureau of Prisons**, may reduce the term of imprisonment … after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that -- (i) extraordinary and compelling reasons warrant such a reduction; …"  18 U.S.C. § 3582(c)(1)(A) (emphasis added).

In light of the statute's plain requirement that only the BOP has standing to make such a request for release, the overwhelming majority of courts – including the Sixth Circuit – have held that a federal district court "lacks authority to review a decision by the BOP to not seek a compassionate release for an inmate under § 3582(c)(1)(A)(i)." *Crowe v. United States*, 430 F. App'x 484 (6th Cir. 2011) (collecting cases).  Further, because a compassionate release falls under 18 U.S.C. § 3582, *see* (c)(1)(A), the process must be undertaken in the court where the prisoner was sentenced.  *See Justice v. Sepanek*, No. 12-CV-74-HRW (E.D. Ky. Mar. 11, 2013) (holding that this Court lacked

jurisdiction to grant habeas relief ordering compassionate release under § 3582); *Caudill v. Hickey*, No. 12-CV-7-KKC, 2012 WL 2524234 (E.D. Ky. June 29, 2012) (holding that compassionate release must be requested in and ordered by the sentencing court); *Quaco v. Ebbert*, No. 1:CV-12-117, 2012 WL 1598136, at *2 (M. D. Pa. May 7, 2012) (finding that a § 2241 petition was not the proper vehicle for obtaining a compassionate release and because it is typically pursued in the sentencing court); *Smoke v. United States*, No. 09-2050 (JRT/AJB),2009 WL 5030770, at *4 (D. Minn. Dec. 14, 2009) (same). Compassionate release cannot be granted in a § 2241 proceeding.

Finally, Heard contends that, because of his cardiac condition, Warden Quintana has discriminated against him and violated his right to equal protection. *See* § 2241 Petition [Record No. 1, p. 3] That claims falls under the Fifth Amendment of the U.S. Constitution. Heard also alleges that Warden Quintana's allegedly discriminatory actions violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*., and the Rehabilitation Act ("RA"), 29 U.S.C. § 794. [*Id*., p. 4] In asserting his equal protection/discrimination claims, Heard is essentially challenging a condition of his confinement at FMC-Lexington. In this circuit, however, a federal prisoner may not use § 2241 to pursue a civil rights claim; he can only assert such claims by filing suit under 28 U.S.C. § 1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). *See Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004); *Sullivan v. United States*, 90 F. App'x 862, 863 (6th Cir. 2004). Similarly,

any claims alleging discrimination under the ADA and/or the RA must be asserted in civil rights action, not in a § 2241 petition.

Even so, the Fifth Amendment's Equal Protection Clause does not prohibit the government from treating different groups of persons in different ways; it merely prohibits the government from doing so arbitrarily or for a legally-impermissible reason. Prisoners are not a suspect classification entitled to strict scrutiny (*see Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997)), and absent status as a "suspect" class, an equal protection claimant must demonstrate not only that he was treated differently from others similarly situated but that the different treatment was not rationally related to a legitimate government interest. *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976); *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir.1990).

Heard does not allege that other FMC-Lexington inmates *similarly situated to him* were treated differently regarding either RRC placement or home confinement. Instead, Heard broadly alleges that he "…is being treated differently than other inmates by being precluded from eligibility in the afore-mentioned Prison programs due to have having a medical defibilator [sic] a pre-existing condition he had before he was allowed to enter the program…." [Record No, 1-1, p. 3] But Heard identifies no specific, similarly situated prisoners at FMC-Lexington, who suffered from cardiac or other serious medical conditions, who were actually allowed RRC placement or who were released to home confinement while he, at the same time, was denied RRC placement and/or home

-14-

confinement based on his medical status. Lacking this vital allegation, Heard has not articulated a valid Fifth Amendment discrimination claim, and this Court has so held in other cases. *See Boals v. Quintana*, No. 15-CV-335-JMH, (E.D. Ky. Jan. 15, 2016) [Record No. 8, therein]; *Muhammad v. Hickey*, No. 5:10-CV-247-JMH, 2010 3190762, at *5 (E.D. Ky. Aug. 10, 2010); *Mejia v. Stine*, No. 05-CV-180-KKC, 2005 WL 2589184, at 83 (E.D. Ky. Oct. 13, 2005).

Further, RCC placement and home confinement decisions are rationally related to the legitimate government interest of ensuring that the BOP be allowed to exercise its discretion under the specific guidelines of the Second Chance Act. *Muhammad*, 2010 3190762, at *5. Therefore, Heard's claim alleging discrimination under the Equal Protection Clause of the Fifth Amendment provides no grounds for relief under § 2241.

## V.

For the reasons discussed above, it is hereby

**ORDERED** as follows:

1. Petitioner Lionel Vincent Heard's 28 U.S.C. § 2241 petition for a writ of habeas corpus [Record No. 1] is **DENIED**.

2. This matter is **DISMISSED**, with prejudice, and **STRICKEN** from the docket.

This 21st day of April, 2016.



Signed By:
*Danny C. Reeves* DCR
United States District Judge